UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAREN M. CURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:15-cv-1173-WTL-TAB |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Karen M. Curtis requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Curtis' application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

**I.   APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d).  At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the Administrative Law Judge ("ALJ")'s decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be affirmed, the ALJ must articulate his analysis of the

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case.  For the sake of simplicity, this Entry contains citations to DIB sections only.

evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II. BACKGROUND

Curtis protectively filed for DIB on May 14, 2012, and SSI on June 7, 2012, alleging that she became disabled on October 10, 2010, due to chronic low back pain, depression, diabetes, severe sleep apnea, depression, and cubital tunnel syndrome.[2] At the hearing, Curtis amended the alleged onset date to April 21, 2011. Curtis was born on August 27, 1968, and she was forty-two years old on the alleged disability onset date. Curtis has some college education and has past relevant work experience as a restaurant manager.

Curtis' application was denied initially on August 9, 2012, and upon reconsideration on October 25, 2012. Thereafter, Curtis requested and received a hearing in front of an ALJ. A hearing, during which Curtis was represented by counsel, was held by ALJ Albert J. Velasquez on December 5, 2013. The ALJ issued his decision denying Curtis' claim on February 6, 2014; the Appeals Council denied Curtis' request for review on June 16, 2015. Curtis then filed this timely appeal.

## III. THE ALJ'S DECISION

The ALJ determined that Curtis met the insured status requirements of the Social Security Act through December 31, 2014. The ALJ determined at step one that Curtis had not engaged in substantial gainful activity since April 21, 2011, the amended alleged onset date. At steps two and three, the ALJ concluded that Curtis had the severe impairment of chronic

---

[2] Curtis previously had filed an application on December 29, 2009. It was initially denied on March 25, 2010, and was denied by a second ALJ on April 20, 2011. Curtis did not appeal this decision.

lower back pain, Record at 23, but that her impairment, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Curtis had the following Residual Functional Capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk for six of eight hours and sit for six of eight hours with no more than occasional climbing of stairs or ramps, balancing, stooping, or crouching. She cannot climb ropes, ladders, or scaffolds; kneel; or crawl. The individual should avoid work at unprotected heights, around dangerous moving machinery, operating a motor vehicle, or working around open flames or large bodies of water.

*Id.* at 27. Given this RFC, the ALJ determined that Curtis was unable to perform her past relevant work as a restaurant manager. However, he found that, considering Curtis' age, education, work experience, and RFC, there are jobs that exist in significant numbers in that national economy that Curtis can perform, namely cashier, general office clerk, and hand packager. Accordingly, the ALJ concluded that Curtis was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Curtis' brief (Dkt. No. 15) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In her brief in support of her complaint, Curtis advances several objections to the ALJ's decision; each is addressed below.

### A. ALJ's Failure to Find Mental Impairments Severe

Curtis argues that the ALJ erred in finding that her depression and anxiety are not severe impairments. Regarding her depression and anxiety, the ALJ concluded that "[t]he claimant's medically determinable impairments of depression and anxiety, considered singly

4

and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." R. at 23. An impairment is non-severe only when the impairment is so slight that it has no more than a de-minimis effect on the ability to perform basic work activities. Social Security Ruling 85-28. "An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R 404.1521(a) and 416.921(a).

Here, the ALJ ignored or discredited the extensive evidence concerning Curtis' mental health. The opinions of all of the medical professionals who gave opinions on Curtis' mental health, including the consultative examiner, were given little weight by the ALJ, who found they were not consistent with the record as a whole. The consultative examiner diagnosed Curtis with Major Depressive Disorder and Recurrent, Moderate, and Generalized Anxiety Disorder. Further, the consultative examiner completed a Mental Residual Functional Capacity Assessment and found Curtis to be moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She also was found, due to psychologically based symptoms, to be moderately limited in the ability to complete a normal workday and workweek without interruptions and unable to perform at a consistent pace without an unreasonable number and length of rest periods. A psychiatric review technique form was also completed and opined Curtis is mildly limited in activities of daily living and maintaining social functioning, but moderately limited in maintaining concentration, persistence, or pace.

Ann Robinson, Curtis' treating psychiatric therapist, completed a Mental Impairment Questionnaire and noted that Curtis has been treated with interpersonal and cognitive behavioral therapy for Anxiety Disorder and Depressive Disorder. Robinson noted many signs

and symptoms exhibited by Curtis and opined that Curtis is somewhat limited in the ability to in the ability to understand, remember and carry out very short and simple instructions and to make simple work-related decisions and seriously limited in the ability to remember work-like procedures and to respond appropriately to changes in a routine work setting. Robinson also noted additional limitations.

In short, every medical professional who offered an opinion as to Curtis' mental health found that she had more than minimal limitations due to her mental impairments. Nonetheless, the ALJ gave these opinions little weight due to what he characterized as their failure to be consistent with the record as a whole.

However, "deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Thus, any error at step two would be harmless if the ALJ properly considered all of Curtis' severe and non-severe impairments in making the RFC determination. *See id.* As explained below, he did not do so.

### B. ALJ's Failure to Accounts to Any Restrictions Due to Mental Impairments

Curtis also argues that the ALJ failed to account for any restrictions due to mental impairments in the RFC determination. The Court agrees. As described above, there was extensive evidence regarding Curtis' mental impairments. Nonetheless, the RFC determination did not address any mental impairments. Rather than looking at the mental health evidence as a whole, the ALJ focused on a few instances of improved mental status. In doing so, he discounted the opinions of medical professionals who had examined Curtis and found certain limitations. "An ALJ must evaluate all relevant evidence when determining an

applicant's RFC, including evidence of impairments that are not severe." *Arnett*, 676 F.3d at 591 (citing 20 C.F.R. § 404.1545(a)). The Court will uphold the ALJ's decision as to the appropriate RFC "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review. *Id.* at 591–592. In this case, the ALJ did articulate his reasoning and cite evidence from the record to support his conclusion. However, the ALJ glossed over and ignored relevant evidence, leaving the Court unable to find that the decision is supported by substantial evidence. An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009). *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (citations omitted). The ALJ also did not provide a logical bridge between the evidence, including the medical opinions, and his conclusion. Such an error cannot be harmless. *See generally Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010). On remand, the ALJ should consider the effects of Curtis' documented mental impairments in his RFC determination.

### C.  ALJ's Failure to Fully and Fairly Develop Record

Finally, Curtis argues that the ALJ failed to fully and fairly develop the record concerning her back pain. However, Curtis had obtained x-rays in the past that were unremarkable. Further, Curtis had only undergone physical therapy for two months in 2011 and had declined the suggestion of her primary care physician that she attend further physical therapy session. As such, in light of the evidence, it was reasonable for the ALJ to determine that additional evidence, including x-rays, was not needed.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

**SO ORDERED: 9/9/16**

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.